Jeffrey E. Goldman, Esq.
THE LAW OFFICES OF JEFFREY E. GOLDMAN
260 Madison Ave., 15th Floor
New York, NY 10016
Phone: 212-983-8999
Fax: 646-693-2289

*Attorney for Plaintiff and proposed FLSA collective plaintiffs and Rule 23 class.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROMINA MORALES INOSTROZA, *on behalf of herself and those similarly situated,*<br><br>Plaintiffs,<br><br>- against -<br><br>JEAN TIENKEN and COMIC STRIP PROMOTIONS, INC.<br><br>Defendants. | **COLLECTIVE ACTION and RULE 23 CLASS ACTION COMPLAINT**<br><br>**DOCKET NO. 24 cv 3400**<br><br>**Jury Trial Requested** |

Romina Morales Inostroza ("Plaintiff"), on her own behalf and on behalf of others similarly situated, by her attorneys, The Law Office Of Jeffrey E. Goldman allege as follows:

## NATURE OF THE CASE

1. This is a class and collective action brought by Plaintiff on her own behalf and on behalf of a proposed collective identified below. Plaintiff, and the proposed collective, were or are employed as food service workers (i.e., servers, bussers, runners, barbacks and bartenders) by Jean Tienken ("Tienken") and Comic Strip Promotions, Inc. ("Comic Strip") (collectively "Defendants").

2. This action is brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, ("FLSA") and the New York Labor Law § 190 *et seq.* ("NYLL") to recover unpaid minimum wages, unlawfully misappropriated tips, and other monies.

3. Defendants have failed to compensate their food service workers at the federal and state minimum wage, and unlawfully misappropriated a portion of their tips.

4. Plaintiffs seek injunctive and declaratory relief against Defendants' unlawful actions, payment of the minimum wage, payment of the overtime wage, return of the tip credit (i.e. the difference between the full applicable minimum wage and the hourly wage Defendants actually paid to their food service workers), return of the misappropriated tips, return of unpaid wages, liquidated damages, interest, and attorneys' fees and costs as permitted in accordance with the FLSA and NYLL.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 29 U.S.C. § 216(b), and 28 U.S.C. § 1331 and 1337, and has supplemental jurisdiction over Plaintiffs' NYLL claims pursuant to 28 U.S.C. §§ 1332 and 1367.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1331, as the location of Comic Strip, the restaurant/comedy club where Plaintiffs worked, is in the Southern District of New York.

## PARTIES

7. Plaintiff Romina, a resident of New York State, was employed by Defendants from December 10, 2022 to June 15, 2023. Romina was employed as a server. Throughout her employment, she was paid $10 an hour, but was not paid for some of the hours she worked. Romina typically worked 5 days per week, she typically worked Wednesday, Thursday and Sunday from 7:00 pm until 12:00 am. On Friday and Saturday, she worked from 7 pm to 1 am. She would occasionally work the preshow which was from 4 pm until closing at 12 am or 1 am. The preshow was on Wednesday and Saturday.

8. Plaintiff was Defendants' employees within the meaning of the FLSA and NYLL.

9. Defendant Comic Strip Promotions, Inc. ("Comic Strip") is a New York limited liability company that owns and operates the Comic Strip, a restaurant located at 1568 2nd Ave., New York, New York. The website for the restaurant is www.comicstriplive.com.

10. The restaurant is liquor license is not currently incompliance with the New York State Liquor Authority. Exhibit 1. Defendant, Jean Tierney's application to the State Liquor Authority was "Disapproved." Exhibit 1.

11. Upon information and belief, Defendants jointly and individually have an annual gross volume of sales in excess of $500,000.00.

12. The restaurant charges admission to its shows of $20-$25 per show, plus a 2 drink minimum. The beverages range from $12 for a beer to $20 for a drink.

13. The restaurant also sells food.

14. The restaurant sometimes has a "cash only" policy. Exhibit 2, Yelp, Customer complaint, Nate M., March 14, 2022.

15. Defendant Tienken is the owner and operator of the Comic Strip, and has been an active manager with authority to control the pay practices and employment policies.

16. Tienken controls the employees' records and rate of pay.

17. Tienken is in the business on a regular basis overseeing the operation.

18. Tienken answers comments, complaints and posts online.

19. Tienken describes herself as the owner of the Comic Strip and is quoted in the press.[1]

20. Tienken filed for the Comic Strip liquor license application with New York State.

21. At all relevant times, corporate Defendants have been and continue to be an "employer" engaged in "commerce" and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.

22. Defendants are engaged in interstate commerce, as numerous items that are used in the restaurant on a daily basis are goods purchased outside of New York.

23. For example, Comic Strip's sells Bacardi Rum and Spirts manufactured in Florida and Puerto Rico in the restaurant and numerous other products in the restaurant that are manufactured in foreign countries, like Cointreau liquor which is manufactured in France.

24. The Comic Strip employed the Plaintiff and other workers who handle goods or materials that have moved or been produced in interstate commerce, like potatoes grown in Idaho and served as French fries in the restaurant, or beef from Illinois served as hamburgers in the restaurant.

## COLLECTIVE ACTION ALLEGATIONS

25. Plaintiff brings her FLSA claims on behalf of herself and similarly situated employees (i.e., servers, bussers, runners, barbacks and bartenders) who are, or have been employed by Defendants in the three years preceding the filing of this Action.

---

[1] Upper East Site, April 11, 2023, The Comic Strip's 3 million dollar lawsuit against Upper East Site tossed out by Judge.

26. The members of the FLSA collective have been victims of Defendants' common policies and practices which have denied Plaintiff and the collective of the full minimum wage and earned tips.

27. The FLSA Collective consists of servers, runners, bussers, barbacks, and bartenders who during their employment fell into the category of "tipped employees," who customarily earned more than $30.00 per month in tips and were required by the Comic Strip to participate in a tip-pooling system whereby all of the servers were required to tip out managers, the kitchen and the dishwashers pursuant to a formula described herein.

28. As part of its regular business practice, Defendants have intentionally, willfully, and repeatedly harmed Plaintiff and the FLSA collective by engaging in a pattern, practice and policy of violating the FLSA. This pattern, practice and policy includes:

    a. Failing to pay the minimum wages and overtime wage;

    b. Depriving food service workers of the tips they earned;

    c. Improperly taking a tip credit toward food service workers' wages;

    d. Redistributing portions of the tips earned by food service workers to the managers, dishwashers, cooks, and other individuals who were not entitled to tips pursuant to the FLSA and NYLL;

    e. Failing to make timely payments of wages;

    f. Making unlawful deductions from wages.

29. Defendants have engaged in unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees' compensation by willfully and knowingly violating the FLSA.

30. The FLSA collective would benefit from the issuance of a court supervised notice of the present lawsuit and the opportunity to join this action.

31. The identities of these similarly situated employees are or should be known to Defendants and are locatable through Defendants' business records.

## CLASS ACTION ALLEGATIONS

32. Pursuant to Rule 23 of Federal Rules of Civil Procedure, Plaintiff brings this lawsuit as a class action on behalf of all food service employees who are employed or who have been employed by Defendants within six years prior to the filing of this Complaint.

33. **Numerosity**: The potential number of persons in the Class is so numerous that joinder of all members would be unfeasible and impractical. The disposition of their claims through this class action will benefit both the parties and this Court. The number of persons in the Class is unknown to Plaintiff at this time; however, it is estimated that the number exceeds 40 individuals over the claim period.[2]

34. **Commonality and Typicality**: The claims of Plaintiff (for violations of the FLSA and NYLL based on their maintenance of an invalid tip pool and illegally paying Plaintiff and the class a rate of below the minimum wage) is typical of the claims of all of the other members of the Class because all of them sustained similar injuries and damages arising out of Defendants' common course of conduct in violation of law and the injuries and damages of all of the other

---

[2] Approximately 10 to 12 servers work at the Comic Strip at any one time. The Comic Strip has a high turn over of tipped employees.

members of the Class were caused by Defendants' wrongful conduct as described in this Complaint.

35. **Ascertainable Class**: The proposed Class is ascertainable in that its members can be identified and located using information contained in Defendants' payroll and personnel records.

36. **Adequacy**: Plaintiff is adequate representatives of the Class; will fairly protect the interests of the other members of the Class; have no interests antagonistic to the members of the Class; and will vigorously pursue this suit via attorneys who are competent, skilled and experienced in litigating matters of this type. Class Counsel is competent and experienced in litigating large wage payment class actions.

37. **Superiority**: The nature of this action makes the use of the class action vehicle a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the other members of the Class for the wrongs alleged herein, as follows:

   a. This case involves a corporate Defendant and a large number of individuals with many relatively small claims and common issues of law and fact

   b. If each individual member of the Class was required to file an individual lawsuit, Defendants would necessarily gain an unconscionable advantage because, with its vastly superior financial and legal resources, it would be able to exploit and overwhelm the limited resources of each individual member of the Class;

   c. Requiring each individual member of the Class to pursue an individual remedy would also discourage the assertion of lawful claims by members

       of the Class who would be disinclined to pursue an action against Defendants because of an appreciable and justifiable fear of retaliation;

d. The Prosecution of separate actions by the individual members of the Class, even if possible, would create a substantial risk of inconsistent or varying verdicts or adjudications with respect to the individual members of the Class against Defendants; would establish potentially incompatible standards of conduct for Defendants, would result in legal determination with respect to individual members of the Class which would, as a practical matter, be dispositive of the interest of the other members of the Class who are not parties to the adjudications; and/or would substantially impair or impede the ability of the members of the Class to protect their own interests;

e. The claims of the individual members of the Class may not be sufficiently large to warrant vigorous individual prosecution considering all of the concomitant costs and expenses thereto;

f. Furthermore, as the damages suffered by each individual member of the Class may be relatively small, the expense and burden of individual litigation would make it difficult of impossible for individual member of the Class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action; and

g. The costs to the court system of adjudication of such individualized litigation would be substantial.

## **FACTS**

38. The staff was paid an hourly wage of $10 an hour. The Plaintiff was not paid for all of the hours she worked. Generally the staff worked between 5 and 6 hours during each shift.

39. The FLSA and the NYLL provide that in order to be eligible for this tip credit, employers of tipped employees must inform food service workers about their intention to apply the tip credit towards the employees' wages and also must allow employees to keep all of the tips that they receive.

40. Managers, dishwashers and kitchen staff and other non-service employees are prohibited from sharing in the tips received by the "food service workers."

41. The FLSA and NYLL permit employees to participate in a tip pool where tipped employees combine all of their tips together and then redistribute them amongst themselves.

42. At all times relevant hereto, Defendants established and imposed a tip share upon the Comic Strip's servers and required the server to share:

5% of their tips with the dishwasher,

5% for the cook,

15% for the bartender.

43. If the manager covered for the dishwasher, cook or bartender, then the manager received that person's share.

44. Plaintiff recalls that the General Manager JR, sometimes was paid 25% of her tips when he worked as bartender, cook and dishwasher. At least once or twice a week, JR received a portion of the Plaintiff's tip.

45. The other managers, Phil and Jake also participated in the tip out when they covered the dishwasher, cook or bartender's jobs.

9

46. Plaintiff recalls that Phil and Jake also received a portion of the tip out on a weekly basis.

47. By mandating the participation of the dishwasher, cook and managers in the tip share, Defendants have violated both the FLSA and NYLL.

48. At the Comic Strip, the dishwasher would wash the dishes in the kitchen during each shift. At the Comic Strip, the cook would cook the food in the kitchen. "Certain back-of-the-house restaurant staff, including cooks and dishwashers, cannot participate in valid tip pools under the FLSA because they do not interact with customers." Chhab v. Darden Rests., Inc., No. 11 Civ. 8345(NRB), 2013 WL 5308004, at *6 (S.D.N.Y. Sept. 20, 2013)

50. When the managers participated in the tip share, they worked as the manager and the dishwasher and/or the cook. The manager always continued their duties as managers even when they participated in the tip out. In some cases, the manager was the manager, dishwasher and the cook at the same time.

51. While working as a dishwasher and cook, the employee had no contact with customers.

52. The dishwasher and cook would spend the entire shift in the kitchen.

53. Defendants did not keep track of the tips.

54. The dishwasher, cook and manager are excluded from the definition of the FLSA collective.

55. By these and other acts, Defendants have taken gratuities belonging to Plaintiff and the FLSA Collective and unlawfully diverted them to non-service staff who are not entitled to share in the tip pool at the restaurant, thereby preventing the food service workers from retaining all of the tips left for them in violation of the FLSA and NYLL.

56. Because Defendants established an illegal tip pooling scheme at Comic Strip, they are not entitled to take advantage of the tip credit and reduce the minimum wages of Plaintiff and the FLSA Collective by applying the tip credit allowance that is available under the FLSA and the NYLL.

## COMIC STRIP VIOLATES THE 80/20 RULE

57. Defendants violated the FLSA's 80/20 rule by requiring employees to work more than 2 hours or spend 20% of their shift doing work that directly supports work performed by a tipped employee and work that is not part of the tipped occupation.

58. During the week, Plaintiffs would typically arrive for their evening shifts at 7 pm and do 1 hours of side work prior to the restaurant opening to the public.

59. After the kitchen closed around 11:00 pm, Plaintiffs would typically have another 1 to 2 hours of side work.

60. Plaintiffs were forced to do excessive amounts of directly supporting work of tipped employees ("side work") including at the beginning of each shift for approximately 1 hour (prior to the food service starting): setting up the restaurant's tables, placing silverware and napkins on tables, polishing silverware, setting up service stations, and other tasks.

61. After the kitchen was closed at the end of the night, the server usually had another 1 to 2 hours of closing work. Plaintiff was forced to do more side work, such as breaking down the dining room after parties, cleaning the coffee machines, filling ketchup and mayo cups and other side work.

62. Defendants should have kept track of the time that Plaintiff worked doing "side work" and "tip ineligible work."

## DEFENDANT FAILED TO PAY TIPPED STAFF FOR ALL TIME WORKED

63. Defendants would require servers to work Sunday to Thursday from 7 pm to 12 am. They worked on Friday and Saturday from 7 pm or 1 am. The shifts were 5 or 6 hours shift.

64. Defendants paid Plaintiff $10 an hour.

65. Plaintiff's paycheck was often short wages.

66. When Plaintiff complained about the underpayment of her wages Plaintiff was told by the managers that Defendants only paid Plaintiff for 4 hours for each shift even when the Plaintiff worked longer than 4 hours.

67. Plaintiff complained but was told that it how the restaurant operates.

## FIRST CAUSE OF ACTION
## FLSA – Unpaid Minimum Wages

68. Plaintiff repeats and incorporates by reference all allegations in all preceding paragraphs.

69. Defendants are employers within the meaning of 29 U.S.C. §§ 203(e) and 206(a).

70. Defendants were required to pay Plaintiff and the FLSA Collective the applicable federal minimum wage rate for all hours worked.

71. Plaintiff was paid $10 an hour.

72. Plaintiff was not paid for all of the hours that she worked.

73. Defendants routinely did not pay the plaintiff for all of the hours that she worked.

74. Defendants did not keep any records of employee clock in and clock out.

75. Defendants were aware of or should have been aware that the practices described in this Complaint were unlawful and did not make a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective.

76. As a result of Defendants' willful violations of the FLSA, Plaintiffs and the FLSA Collective suffered damages to be determined at trial and are entitled to the recovery of such

amounts and liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, costs, and other damages pursuant to the FLSA.

**SECOND CAUSE OF ACTION**
**FLSA – Manager keeping part of tips 29 U.S.C. § 203(m)(2)(B)**

77. Plaintiff repeats and incorporates by reference all allegations in all preceding paragraphs.

78. Defendants included managers in the Defendants' tip share which results in the Plaintiff and the Collective Members being forced to share tips with them.

79. Under the FLSA, "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C. § 203(m)(2)(B)("An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit.")

80. The provisions regarding misappropriation of gratuities set forth in the FLSA, 29 U.S.C. § 201, et. seq., and the supporting federal regulations, apply to Defendants and protect Plaintiff and the FLSA Collective.

81. Defendants unlawfully demanded or accepted, directly or indirectly, part of the gratuities received by Plaintiff and the FLSA Collective in violation of § 203(m) of the FLSA and the supporting United States Department of Labor Regulations.

82. Defendants unlawfully retained gratuities and/or administrative fees intended for the Plaintiff and the FLSA Collective in violation of § 203(m) of the FLSA and the supporting United States Department of Labor Regulations.

83. Defendants mandated and initiated a tip sharing arrangement in which staff was required to share tips with other employees, including tip ineligible employees like the managers.

84. As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by having their gratuities misappropriated in amounts to be determined at trial, and are entitled to recovery the misappropriated gratuities, liquidated damages, attorneys fees and costs, prejudgment interest, post judgment interest and other compensation pursuant to 29 U.S.C. § 201, et. seq.

### THIRD CAUSE OF ACTION
### FLSA - Violation of the 80/20 Rule, 29 C.F.R. § 531.56

85. Plaintiff repeats and incorporated by reference all allegations in all preceding paragraphs.

86. Plaintiff and Collective Members frequently worked longer than 2 hours or more than 20% of their shift doing side work or tip ineligible work. 29 U.S.C. §201 et. seq.

87. Employers may only take a tip credit for work performed by a tipped employee that is part of the employee's tipped occupation. 29 C.F.R. § 531.56.

88. Plaintiff was required to spend more than 2 hour or 20% of her time doing directly supporting work ("side work"), including setting napkins, cleaning silverware, stocking or making coffee, set up and breakdown of water stations, setting service stations, breaking down service station, bussing tables, setting up and breaking down ice, collecting dirty napkins, setting tables, wiping down tables and surfaces, cleaning the dining room, cleaning the floor, mopping the floor, and other tip ineligible work. 29 C.F.R. § 531.56(f)(3).

89. Plaintiff and Collective members would arrive at 7 pm. From 7 pm to 8 pm, Plaintiff would do opening work. From 8 pm to 11 pm were the hours of service. During this

time period she would do additional side work. From 11 pm to 12 am or 1 pm, she would do 1 to 2 hours of closing work.

90. In total, the Plaintiff did more than 2 hours of side work. Since her shift was only 5 or 6 hours, her side work should not have exceeded 60 minutes or 72 minutes respectively.

91. Plaintiff and Collective Members were employed in "dual jobs." 29 C.F.R. § 531.56(e).

92. Employees should be paid the regular minimum wage while performing tip ineligible work which includes assisting with dishes, wiping down the refrigerators, setting up and breaking down the dining room, moving tables and chairs, cleaning coffee machines, mopping floor, cleaning restaurant, and refilling ketchup and mayo bowls and other side work. *See* 29 C.F.R. § 531.56(f)(5).

93. Plaintiff and Collective Members worked longer than 1 hour at a time doing side work when they arrived from 7 pm to 8 pm and an additional 1 to 2 hours of closing side work. 29 C.F.R. § 531.56(f)(4).

94. Defendants failed to keep track of this time and separate out the time spent doing side work and tip ineligible work.

95. As a result of Defendants willful violations of the FLSA, Plaintiff and the FLSA Collective seek to recover wages for the time that Plaintiff and Collective members spent doing directly supporting work and tip ineligible work which exceeded the threshold for the law, liquidated (double) damages, attorneys' fees and costs, prejudgment interest and post judgment interest and such other legal relief as this Court deems just and proper.

**FOURTH CAUSE OF ACTION**
**NYLL – Unpaid Minimum Wages**

96. Plaintiff repeats and incorporates by reference all allegations in all preceding paragraphs.

97. Defendants are employers within the meaning NYLL §§ 190, 651(5), 652 and the supporting New York State Department of Labor regulations, and employed Plaintiff.

98. Defendants were required to pay Plaintiff the applicable minimum wage rate under the NYLL.

99. Defendants were not eligible to avail themselves of the tipped minimum wage rate under the NYLL because, *inter alia*,

   a. Defendants were required to but failed to provide the required tip credit notice under the NYLL;

   b. Defendants unlawfully distributed portions of the tips received by Plaintiff and the class to employees in positions that do not customarily and regularly receive tips like the dishwasher, cook and managers in violation of the NYLL and its supporting regulations; and,

   c. Defendants illegally made impermissible deductions in the amount of tips given to Plaintiff and the class.

100. Defendants were aware of should have been aware that the practice described in this Complaint were unlawful and did not make a good faith effort to comply with the NYLL with respect to the compensation of Plaintiff.

101. As a result of Defendants' willful violations of the NYLL, Plaintiff suffered damages to be determined at trial and are entitled to the recovery of such amounts and liquidated damages, pre-judgment interest, post-judgment interest, attorneys' fees, costs, and other damages pursuant to the NYLL.

**FIFTH CAUSE OF ACTION**
**NYLL – Unlawful Tip Deductions**

102. Plaintiff repeats and incorporates by reference all allegations in all preceding paragraphs.

103. NYLL § 196-d prohibits employers or their agents from demanding or accepting directly or indirectly any part of the gratuities received by an employee or retaining any part of a gratuity or any charge purported to be a gratuity for an employee.

104. Defendants unlawfully retained tips from Plaintiff and unlawfully redistributed their tips to non-tip eligible employees, like dishwashers, cooks and managers.

105. As a result of Defendants' willful violations of the NYLL, Plaintiff is entitled to recover from Defendants their unpaid tips, reasonable attorneys' fees, liquidated damages, and pre-judgment interest and post-judgment interest.

## SIXTH CAUSE OF ACTION
**NYLL - Violation of the 80/20 Rule, N.Y. Comp. Codes R. & R. tit. 12 §146-2.9**

106. Plaintiff repeats and incorporates by reference all allegations in all preceding paragraphs.

107. N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.9 provides that employer shall not require an employee to work longer than 2 hours or 20% of the day doing non-tipped work.

108. On any day that Plaintiff or Class Members worked at doing work which directly supports tip work and tip ineligible work (a) for two hours or more; or (b) for more than twenty percent (20%) of his or her shift, whichever is less, the wages of the employee shall be subject to no tip credit for that day. N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.9.

109. Plaintiff's directly supporting tip work and tip ineligible side work often exceeded 2 hours a day or 20% of their shifts.

110. Upon arrival at the restaurant for their shifts, Plaintiff had more than 1 hours of opening side work to to complete.

17

111. Plaintiff often had to do another 1 to 2 hours of closing side work before they could leave at the end of the shift after the kitchen closed.

112. As a result of Defendants' willful and intentional unlawful conduct, Defendants are liable to Plaintiff for the tip credit wage for each day that Plaintiff worked longer than 2 hours or 20% of their day doing side work, lost wages, liquidated damages and other damages along with costs and attorneys' fees, pre-judgment interest, post-judgment interest, all other damages available under New York law, and such other legal relief as the Court deems just and proper.

### SEVENTH CAUSE OF ACTION
### New York Labor Law-Record Keeping Violations

113. Plaintiff repeats and incorporates by reference all allegations in all preceding paragraphs.

114. Defendants failed to make, keep and preserve accurate records with respect to Plaintiff, including hours worked each workday, and total hours worked each week, as required by the NYLL and its supporting regulations.

115. Defendants failed to provide the Plaintiff with a wage notice when she was hired in violation of the NYLL § 195(1).

116. Defendants failed to provide Plaintiff with accurate wage statements as required by NYLL § 195(3) of the Wage Theft Prevention Act.

117. Defendants issued wage statements containing numerous inaccuracies including using the tip credit wage when it should have included the regular minimum wage, and other violations contrary to the requirements of NYLL § 195(3).

118. Due to Defendants' failure to provide accurate wage notices and wage statements, Plaintiffs suffered "concrete, downstream injuries," in the form of deprivation of adequate wages,

because it prevented Plaintiff from discovering that Defendants were systematically underpaying her in the form of the incorrect tip credit rate or hourly wage.

119. Defendants did not provide any wage notice which caused the Plaintiff to believe they were being paid according to the law and not question her wages.

120. Had the Defendant provided a wage notice, she would have been able to see that she was being underpaid.

121. Defendants' failure to make, keep and preserve accurate records was willful.

122. As a result of Defendants' willful and unlawful conduct, Plaintiff is entitled to an award of damages, in an amount to be determined at trial, costs and attorneys' fees, as provided by NYLL § 198.

## EIGHTH CAUSE OF ACTION

**New York Law Law § 193(1); NYLL § 146-2.7 of the Hospitality Wage Order**

123. Plaintiff, on behalf of themselves and the members of the Class, realleges and incorporate by reference all preceding paragraphs as if they were set forth again herein.

124. New York Law Law § 193(1) deducting customer walk outs from wages.

125. NYLL § 146-2.7 of the Hospitality Wage Order prevents employers from deducting the cost of walk outs from an employees wages.

126. The restaurant charged employees for customer walk outs which occurred on her shift.

127. Plaintiff was forced to pay the restaurant approximately $60 from her wages because of a customer walk out.

128. Customers were required to purchase 2 items on the menu. If the customer failed to purchase 2 times on the menu then the server was required to pay for the 2 items out her wages.

129. Plaintiff's wages were deducted by defendant on at least 2 occasions when a customer did not purchase the two required items.

130. As a result of Defendants' willful and unlawful conduct, Plaintiff is entitled to an award of damages, in an amount to be determined at trial, prejudgment and post judgment interest, costs and attorneys' fees, as provided by NYLL § 198.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully pray that judgment be granted awarding Plaintiff:

(a) Unpaid wages, tips, Compensatory damages;

(b) Liquidated damages;

(c) Prejudgment and post judgment interest;

(d) Attorneys' fees and costs; and

(e) Such other legal and equitable relief as the Court deems necessary and proper.

Dated: May _____, 2024
New York, New York

                                        THE LAW OFFICES OF JEFFREY E. GOLDMAN

                                        By: _____
                                              Jeffrey E. Goldman
                                              260 Madison Ave., 15th Floor
                                              New York, NY 10016
                                              Phone: 212-983-8999
                                              Fax: 646-693-2289

                                              *Attorney for Plaintiff and proposed FLSA collective plaintiffs and Rule 23 class.*